RONDY, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Rondy, Inc. v. Commissioner
Docket No. 4325-94.
United States Tax Court
T.C. Memo 1995-372; 1995 Tax Ct. Memo LEXIS 378; 70 T.C.M. (CCH) 332; August 8, 1995, Filed *378 Decision will be entered for respondent. Jerome J. Joondeph for petitioner. Jeffry J. Erney, for respondent. RAUM, Judge RAUM
MEMORANDUM OPINION RAUM, Judge: The Commissioner determined a $ 155,282 deficiency in income taxes for petitioner's fiscal year ending September 30, 1989. The issue before us is whether section 481(a) [1] adjustments included in income during the year at issue are subject to the section 1374 built-in gains tax. The case was submitted fully stipulated. Petitioner, Rondy, Inc., is an Ohio corporation with its principal place of business in Barberton, Ohio. It began doing business in 1965. Its business is the manufacturing/recycling of tire buffings and plastics. In 1987, petitioner made an application to change its accounting method from the modified accrual method to the accrual method. Pursuant to Rev. Proc. 85-36, 1985-2 C.B. 434, *379 the modified accrual method of accounting was a Category A method. A Category A method of accounting is one that is specifically not permitted by the Code, regulations, or a decision of the U.S. Supreme Court, or a method that is clearly erroneous. See Rev. Proc. 85-36, supra, citing Rev. Proc. 84-74, 1984-2 C.B. 736. [2]
The change in accounting method included a section 481(a) adjustment for the following amounts: Accounts receivable, trade
$ 1,807,965 Interest receivable
14,136 Prepayments
180,675 Refundable payroll taxes
15,708 Accounts payable, trade
(327,417)
Accrued payroll
(37,033)
Accrued payroll taxes -employees' portion
(36,841)
Accrued property taxes
(25,500) Subtotal
$ 1,591,693 Less: Adjustments made on the
Form 1120 U.S. Corporation
Income Tax Return for the
period ending 6/30/88
Accounts payable
(232,520)
Interest receivable
5,260 Total recomputed
Section 481 adjustment
$ 1,364,433 *380 Pursuant to Rev. Proc. 85-36, supra, the section 481(a) adjustment was to be spread equally over 3 years. The annual increment for the section 481(a) adjustment was $ 454,811 ($ 1,364,433 divided by 3). The section 481(a) adjustment included in income for the fiscal year ended September 30, 1989, was $ 454,811. Included with the Form 1120 filed for the fiscal year ended June 30, 1988, petitioner made an application to change its accounting treatment of inventory from the full absorption method to the uniform capitalization method pursuant to section 263A. Petitioner calculated a section 481(a) adjustment as follows: Wages and salaries
$   276,614
Payroll taxes
17,842
Employee benefits
11,686
Office expenses
15,559
Telephone
15,106
Travel expenses
7,073
Corporate taxes
55,528
Total capitalizable cost
$   399,408
Cost of goods sold
(excluding change)
$ 8,177,313
Capitalizable cost divided by
cost of goods sold (excluding
change)
4.884%
Inventory
155,677
Section 481(a) adjustment
(Inventory times 4.884%)
$    7,603
This section 481(a) adjustment was spread equally over 4 years. The annual increment for this *381 section 481(a) adjustment was $ 1,901 ($ 7,603 divided by 4). The section 481(a) adjustment for inventory included in the fiscal year ended September 30, 1989, was $ 1,901. Effective July 1, 1988, petitioner elected to convert from a subchapter C corporation to a subchapter S corporation. The issue before us is essentially the same as what we faced very recently in Argo Sales Co. v. Commissioner, 105 T.C.     (1995). There we held that a section 481(a) adjustment was recognized built-in gain, as contemplated by section 1374. We reach the same conclusion here. As in Argo Sales Co. v. Commissioner, petitioner raised no issue as to the calculation of the tax, or as to the existence of any recognized built-in losses. The sole issue before us is whether petitioner's section 481(a) adjustments are recognized built-in gain. Section 1374 provides, in part, as follows: (a) General Rule.--If for any taxable year beginning in the recognition period an S corporation has a net recognized built-in gain, there is hereby imposed a tax (computed under subsection (b)) on the income of such corporation for such taxable year. * * * * (d) Definitions and Special Rules.--For purposes *382 of this section-- * * * * (2) Net recognized built-in gain.-- (A) In general.--The term "net recognized built-in gain" means, with respect to any taxable year in the recognition period, the lesser of-- (i) the amount which would be taxable income of the S corporation for such taxable year if only recognized built-in gains and recognized built-in losses were taken into account, or (ii) such corporation's taxable income for such taxable year (determined as provided in section 1375(b) (1) (B)).
* * * * (3) Recognized built-in gain.--The term "recognized built-in gain" means any gain recognized during the recognition period on the disposition of any asset except to the extent that the S corporation establishes that-- (A) such asset was not held by the S corporation as of the beginning of the 1st taxable year for which it was an S Corporation, or (B) such gain exceeds the excess (if any) of-- (i) the fair market value of such asset as of the beginning of such 1st taxable year, over (ii) the adjusted basis of the asset as of such time. * * * * (5) Treatment of certain built-in items.-- (A) Income items.--Any item of income which is properly taken into account during *383 the recognition period but which is attributable to periods before the 1st taxable year for which the corporation was an S corporation shall be treated as a recognized built-in gain for the taxable year in which it is properly taken into account.
Section 1374(d)(5)(A), as quoted above, was added by section 1006(f)(5)(A) of the Technical and Miscellaneous Revenue Act of 1988 (TAMRA), Pub. L. 100-647, 102 Stat. 3342, 3403-3406. The amendments made by TAMRA were effective as if made by the Tax Reform Act of 1986 (TRA 86), Pub. L. 99-514, 100 Stat. 2085; TAMRA section 1019(a), 102 Stat. 3593. In Argo Sales Co. we examined the legislative history of the addition of section 1374(d)(5), specifically H. Rept. 100-795 at 63 (1988). We decided that section 1374(d)(5) should be read broadly to give effect to Congressional intent, and that the definition of "recognized built-in gain" in section 1374(d)(3) must be read in conjunction with section 1374(d)(5). Finally, we decided that a section 481(a) adjustment is included in "any item of income" under section 1374(d))(5). As we noted in Argo, section 481(a)(2) provides that in computing the taxpayer's taxable income, "there shall *384 be taken into account those adjustments which are determined to be necessary solely by reason of the change [in accounting method] in order to prevent amounts from being duplicated or omitted". The section 481(a) adjustments at issue were made to prevent the omission of items from corporate income. They resulted from accounting method changes that occurred while petitioner was a subchapter C corporation, subject to the corporate income tax. Clearly, as in Argo, the section 481(a) adjustments represent untaxed corporate income. Petitioner was permitted to spread its first section 481(a) adjustment over 3 years. It spread its second section 481(a) adjustment over 4 years. As we stated in Argo, this was meant to ease the burden petitioner otherwise would have faced if it had been required to recognize the entire section 481(a) adjustment in the year of change. [3] Petitioner would use this period and a subsequent subchapter S election, not to ease the burden with respect to the corporate tax on the as yet unrecognized income, but rather to wipe out that portion of the burden entirely. In our opinion, section 1374 was designed, in part, to avoid just such a result. *385 We summarized our conclusion in Argo as follows: Section 1374(d)(5) provides that any item of income properly taken into account during the recognition period, which is attributable to the period before the subchapter S election, shall be treated as recognized built-in gain. As our discussion above should make clear, the section 481(a) adjustment comes squarely within this description. The subchapter S election does not eliminate the corporate tax on the section 481(a) adjustment.
Argo Sales Co. v. Commissioner, 105 T.C.    ,     (1995) (slip op. at 8-9). We reach the same result here. Had petitioner made use of a proper method, instead of an impermissible method, of accounting, the amounts that make up the first section 481(a) adjustment at issue would have been included in income in earlier years, and subjected to the corporate tax prior to the subchapter S election. Petitioner attempts to avoid what is clearly the proper result through the use of a timely change in accounting method. This reasoning flies in the face of the objectives of section 1374. Section 1.1374-4(d), Income Tax Regs., provides that section 481(a) adjustments such as those at *386 issue are recognized built-in gain or loss. However, this regulation had an effective date of December 27, 1994, pursuant to section 1.1374-10(a), Income Tax Regs. Therefore it is not applicable to this case. Petitioner argues that the Commissioner is applying section 1.1374-4(d), Income Tax Regs., retroactively, contrary to the provisions of section 1.1374-10(a), Income Tax Regs. The Commissioner counters that the regulation is not being applied, but the provisions of section 1374, as interpreted in light of its legislative history, are being applied. We agree with the Commissioner. We addressed petitioner's argument in detail in Argo Sales Co. v. Commissioner, supra. We need not repeat our reasoning here. Suffice it to say that the absence of regulations does not deprive the statute of meaning, or remove this Court's duty to interpret the statute. Petitioner goes on to argue that subjecting section 481(a) adjustments to the built-in gains tax goes beyond Congress's intent for section 1374, which was to support its repeal of the General Utilities doctrine. [4] According to petitioner, applying the built-in gains tax to section 481(a) adjustments does nothing to support the *387 repeal of the General Utilities doctrine, and, therefore, the Commissioner's efforts go beyond congressional intent. We are not persuaded.
True, the original purpose of section 1374 was to support Congress's repeal of the General Utilities doctrine. See H. Conf. Rept. 99-841, 1986-3 C.B. (Vol. 4) at 199, 203. However, Congress thereafter made clear in TAMRA by the addition of section 1374(d)(5) to the Code that section 1374 applies to "any item of income". The argument that section 1374 is limited to the disposition of specific assets fails to give effect to TAMRA's modification of section 1374. The TAMRA amendments plainly disclose the intention of Congress to prevent any items of income properly attributable to subchapter C years from escaping the corporate tax through a subchapter S election. Petitioner *388 attempts to make an issue of a "no change" letter and the point in time that the Commissioner determined that a section 481(a) adjustment is built-in gain. Petitioner argues that the Commissioner failed to follow the IRS procedural rules for "reopening" a "closed case"; see Rev. Proc. 85-13, 1985-1 C.B. 514. However, petitioner rightfully acknowledges that these rules are "merely directory, not mandatory, and compliance with same is not essential to the validity of a notice of deficiency." [Petitioner's Opening Brief at 8.] See also Collins v. Commissioner, 61 T.C. 693, 701 (1974) (citing Luhring v. Glotzbach, 304 F.2d 560, 563 (4th Cir. 1962)). Moreover, it is clear that the notice of deficiency was valid. Petitioner does not allege or argue estoppel, nor does it allege a "second inspection" of its books. See Opine Timber Co. v. Commissioner, 64 T.C. 700, 712 (1975), affd. without published opinion 552 F.2d 368 (5th Cir. 1977); sec. 7605(b). The "no change" letter is not the equivalent of a closing agreement under section *389 7121; cf. Schwager v. Commissioner, 64 T.C. 781, 785-787 (1975) (Estate Tax Closing Letter acknowledged not to be a closing agreement). Finally, were we to accept the idea that the Commissioner did not consider section 481(a) adjustments to be built-in gain until the date of the deficiency notice, it would not affect our opinion. It is well established that the Commissioner is free to correct a mistake of law and is not bound by a prior mistaken interpretation of the law; Dickman v. Commissioner, 465 U.S. 330, 343 (1984); Automobile Club of Michigan v. Commissioner, 353 U.S. 180, 183-185 (1957). We hold that the "no change" letter is of no controlling consequence here. Decision will be entered for respondent. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year at issue.↩
2. Petitioner specifically recognized on its application for change in accounting method, Form 3115, that its use of the modified accrual method of accounting was not permitted by the Internal Revenue Code, the Income Tax Regulations, or by a decision of the United States Supreme Court.↩
3. Sec. 481(b) contains provisions designed to minimize the effect on the taxpayer where the adjustment is substantial, and sec. 481(c) provides that the taxpayer may, in such manner and subject to such conditions as the Secretary may by regulations prescribe, take the adjustments required by subsec. (a)(2) into account in computing the tax imposed by this chapter for the taxable year or years permitted under such regulations.↩
4. The General Utilities doctrine traces its origin to the Supreme Court's decision in General Utilities & Operating Co. v. Helvering, 296 U.S. 200↩ (1935).