**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 6 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENH CIRCUIT

COLORADO GAS COMPRESSION,
INC.,

      Petitioner - Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE,

      Respondent - Appellee.

No. 02-9000

APPEAL FROM THE UNITED STATES TAX COURT
**Docket No. 17251-98**

C. Garold Sims of Sims & Boster, Denver, Colorado, for Petitioner-Appellant.

Teresa T. Milton Attorney, Tax Division, Department of Justice, Washington, D. C.
(David English Carmack, Attorney, Tax Division, Department of Justice, Washington,
D.C.; Eileen J. O'Connor, Assistant Attorney General, with her on the brief), for
Respondent-Appellee.

Before **BRISCOE, HOLLOWAY** and **HARTZ**, Circuit Judges.

**HOLLOWAY**, Circuit Judge.

The IRS determined that petitioner/appellant Colorado Gas Compression, Inc. owed

additional taxes totaling over $900,000 for the years 1994, 1995 and 1996. Colorado Gas

filed a petition in the United States Tax Court to contest the notice of deficiency in 1998. The parties stipulated to all material facts and submitted the matter to the Tax Court for its decision. The Tax Court rejected the arguments of Colorado Gas, 116 T.C. 1 (2001), and entered a decision reflecting revised determinations which set the total deficiencies for the three tax years at just over $800,000.[1]

Colorado Gas now brings this appeal. We have jurisdiction under 26 U.S.C. § 7482(a)(1). We review decisions of the Tax Court "in the same manner and to the same extent" as decisions of the district court. *Id.* This appeal presents only questions of law, which we review *de novo*. *Twenty Mile Joint Venture, PND, Ltd. v. C.I.R.*, 200 F.3d 1268, 1275 (10th Cir. 1999).

## I

The uncontested material facts are fairly simple. Colorado Gas, a corporation with only one shareholder, was incorporated in 1977 to engage in investment and operational activities in oil and gas, mining and real estate. On February 1, 1988, Colorado Gas made an election to come under subchapter S of the Internal Revenue Code, 26 U.S.C. §§ 1361 *et seq.*; the consequences of this election for tax purposes are the focus of this appeal.

At the time of its 1988 election, Colorado Gas held certain assets which had increased in value since the company had acquired them. The appreciation of these assets had not been treated as income for tax purposes because the company had not realized the gains by

---

[1]The Decision set the taxpayer's deficiencies at $33,655.00 for the 1994 tax year; $655,805.00 for the 1995 tax year; and $116,097.00 for the 1996 tax year.

disposing of the assets. As of December 1, 1989, Colorado Gas revoked its subchapter S election. Then, effective January 1, 1994, Colorado Gas again elected to be an S corporation. During the next three tax years it sold assets that had appreciated in value since it had acquired them some time before 1988. Colorado Gas did not report the gain on these sales as income on its corporate tax returns, which led to the deficiency notices at issue here.

## II

The legal issues in this appeal arise from the amendment of the relevant Code section, 26 U.S.C. § 1374, in the Tax Reform Act of 1986. Our analysis begins with a look at the purpose served by this section, which in turn requires a bird's eye view of corporate taxation more generally.

For most ordinary corporations, profits are taxed at the corporate level and then shareholders recognize income subject to taxation when they receive distributions of the net corporate profits as dividends. This so-called double taxation is the treatment of most corporations under subchapter C of chapter 1, subtitle A, of the Internal Revenue Code (the Code). Thus, the ordinary corporation is sometimes referred to as a "C corporation." Subchapter S of the Code was enacted in 1958 to relieve small companies from this double taxation. As amended, subchapter S generally permits a qualified corporation to be taxed like a partnership, with profits and losses being passed through to the shareholders without taxation at the corporate level.

Congress enacted the original version of what is now section 1374 to address a feature

of corporate taxation that appeared to create an undesirable "loophole."  After subchapter S had been enacted and before the predecessor of section 1374 was passed, some corporations (those small enough to have the option of electing treatment under subchapter S) could avoid capital gains tax on appreciated assets by making a subchapter S election before realizing the gains.  To address this perceived problem, section 1378, the predecessor of section 1374, imposed capital gains tax at the corporate level on certain capital gains of subchapter S corporations.

In the Tax Reform Act of 1986, Congress made these provisions (which by that time were contained in section 1374 rather than 1378) considerably more strict.  The amended section imposes a tax on such a capital gain if recognized within ten years of the corporation electing subchapter S status.  The new section 1374 introduced the term "built-in gain" to describe the target of the tax – appreciation in capital assets occurring before subchapter S election and subject to tax at the corporate level for up to ten years in spite of a valid subchapter S election.

Congress also saw fit to lighten the burden caused by this change by enacting Transitional Rules under which a "qualified" corporation could, for a time, be taxed under the less stringent provisions of the old section 1374.  The primary issue in this appeal is whether one specific provision of the Transitional Rules should be interpreted to permit Colorado Gas  to be taxed under the pre-1986 version of section 1374. The provision of the Transitional Rules at issue states:

APPLICATION OF SECTION 1374. – Rules similar to the rules of this subsection shall apply for purposes of applying section 1374 of the Internal Revenue Code of 1986 (as amended by section 632) in the case of a qualified corporation which makes an election to be an S corporation under section 1362 of such Code before January 1, 1989, without regard to whether such corporation is completely liquidated.

Tax Reform Act of 1986, Pub. L. No. 99-514, § 633(d)(8), 100 Stat. 2085 (1986), as amended by the Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647, 102 Stat. 3342, 3409 (1988). The meaning of this provision, which may not be immediately clear, is that for a "qualified corporation" which becomes an S corporation before the specified date (January 1, 1989) long term capital gains will be taxed under the terms of section 1374 as it existed before the Tax Reform Act of 1986, rather than under the amended version of that section. *See* Rev. Rul. 86-141, 1986-2 C.B. 151. Our task is to determine if the capital gains of Colorado Gas addressed by the deficiency notice should be treated under the older version of section 1374 or under the amended version.

### III

It is undisputed that Colorado Gas is a "qualified corporation" within the meaning of the above quoted provision. The term is defined in another subsection of the Transitional Rules and requires only that more than one-half of the company's stock must have been held by ten or fewer qualified persons since August 1, 1986, and its total value must not be greater than $10 million. *See* § 633(d)(5) of the Tax Reform Act of 1986. Colorado Gas relies on a literal reading of the above quoted subsection 633(d)(8) of the Transitional Rules, contending that it is a qualified corporation which made an election under subchapter S

before the required date. No language in the Transitional Rules requires a company to have maintained its subchapter S election continuously through the dates that it recognized long term capital gain, Colorado Gas notes. Moreover, the Tax Court did not cite any authority for its ruling to the contrary.

The IRS, on the other hand, argues that the decision of Colorado Gas to be treated under subchapter C rather than subchapter S for several years after the key date specified in the Transitional Rules (from December 1, 1989, to January 1, 1994) nullifies the fact that Colorado Gas fits within the Transitional Rules' definition of a "qualified corporation which becomes an S corporation for a taxable year beginning before January 1, 1989." Thus, this dispute comes down to whether a qualified corporation must maintain its status as a subchapter S corporation continuously to enjoy the benefit of treatment under the pre-1986 provisions. The IRS notes that S corporations may file more than one S election and asserts that each election should be treated as a discrete event. The Service seems to imply that the fact that the language of the Transitional Rules refers to but a single election demonstrates that a revoked election is a nullity.

But it seems to us that the opposite inference follows more logically from the facts. That is, Congress was aware that companies can and do switch from subchapter C to subchapter S and back again. The Transitional Rules expressly cover a company that elects subchapter S status for "a" taxable year before 1989. If the intent were to limit this beneficial treatment only to companies which made such an election and did not revoke the election

before realizing capital gains, it seems logical to assume that Congress would have said so. "In interpreting a statute we begin with its plain language." *Tax and Accounting Software Corp. v. United States*, 301 F.3d 1254, 1261 (10th Cir. 2002), *cert. denied*, 123 S.Ct. 2246 (2003). The plain language of the Transitional Rules does not support the argument of the IRS.

The IRS also relies on the language of the amended section 1374, which states that dispositions of appreciated assets are subject to tax at the corporate level if they occur during a ten year period from the first day of the first year that the corporation was an S corporation "pursuant to its most recent election." 26 U.S.C. § 1374(d)(9). This argument is circular. The amended section 1374 applies only if the Transitional Rules do not apply. Thus, the language of the Transitional Rules, not of the amended section 1374, controls.

We cannot interpret the Transitional Rules by construing language that is in the amended section 1374 but not in the Rules. The Tax Court's decision is erroneous for just this reason, the language of the amended statute being the only authority cited by that court in its analysis. Both provisions come from the Tax Reform Act of 1986. Contrary to the reasoning of the Tax Court, we think that the inclusion in the amended section 1374 of language limiting some of its provisions to a company's most recent election and the omission of any similar language in the Transitional Rules supports the inference that Congress intended the Transitional Rules to apply whether or not the subchapter S election which brought Colorado Gas within the Rules' definition of a "qualified corporation" was

its most recent election.

This view is in accord with an accepted rule of statutory construction. Where, as here, "'Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *Russello v. United States*, 464 U.S. 16, 23 (1983) (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972)). And as the Supreme Court stated in *Lewyt Corp. v. Commissioner of Internal Revenue*, 349 U.S. 237, 240 (1955):

> But the rule that general equitable considerations do not control the measure of deductions or tax benefits cuts both ways. It is as applicable to the Government as to the taxpayer. Congress may be strict or lavish in its allowance of deductions or tax benefits. The formula it writes may be arbitrary and harsh in its applications. *But where the benefit claimed by the taxpayer is fairly within the statutory language and the construction sought is in harmony with the statute as an organic whole, the benefits will not be withheld from the taxpayer though they represent an unexpected windfall. See Bullen v. Wisconsin*, 240 U.S. 625, 630.

*Id*. at 240 (emphasis added).

Thus we conclude that Colorado Gas is correct that, under the Transitional Rules, the former version of section 1374, rather than the amended version, must be applied. Resolution of this first issue leads, however, to a second – whether Colorado Gas is liable for any capital gains tax under the prior version of section 1374.

**IV**

Colorado Gas contends that it owes no capital gains tax under the previous section

1374.  The Tax Court did not reach this issue because it held that the amended version of section 1374 applied.  Having rejected that holding of the Tax Court, we must now consider the effect of the application of the pre-1986 version of section 1374.[2]

The first two subsections of the former section imposed a tax at the corporate level on certain capital gains.  Colorado Gas relies on an exception to taxation of capital gains at the corporate level found in subsection (c) of the former version of section 1374.  That exception says that the capital gains tax is not imposed on an S corporation if the company's subchapter S election "which is in effect with respect to such corporation for such taxable year has been in effect for the 3 immediately preceding taxable years."  26 U.S.C. § 1374(c) (1982).  The IRS contends that this provision means that the corporate level tax is avoided only if the S corporation in question has been an S corporation for three years before the tax year(s) in question.  Under this view, Colorado Gas would owe capital gains tax calculated under the provisions of the former subsection 1374(b).  Because the subchapter S election in effect for tax year 1994 was made on January 1 of that year, it had not been in effect for the three preceding tax years, and Colorado Gas does not qualify for the exemption for that year.  And similarly, it would not qualify for the other tax years in question, 1995 and 1996.

---

[2]The legislative prescription for application of the pre-1986 version of section 1374 is expressed in language that seems intended to obfuscate, rather than elucidate, the intended meaning.  Nevertheless, the parties and the Tax Court all have expressed the view that the prior version should be applied if we adopt, as we have, the taxpayer's interpretation of the Transitional Rules.  We conclude that this is a correct reading of the obtuse language of subsections 633(d)(1) & (d)(8) of the Transitional Rules.  *See* Rev. Rul. 86-141, 1986-2 C.B. 151.

Colorado Gas, on the other hand, contends that a tax at the corporate level is imposed only for capital gains recognized within three years of its 1988 subchapter S election. If we were to adopt that construction, then no tax would be owed at the corporate level for the capital gains at issue here. But we are simply unable to find any support for this proposed construction of Colorado Gas in the statutory language. The three year "look back" period in the former subsection (c) is expressly applied to the company's election then in effect. That subsection has no language whatsoever that exempts capital gains based on whether the gains were recognized within three years of an earlier election, as Colorado Gas asserts.

We conclude and hold that the construction proposed by the IRS is the correct one on this argument advanced seeking to avoid all tax on the capital gains. Because Colorado Gas made its subchapter S election in 1994, it does not qualify for the exemption provided by former subsection 1374(c) for the tax years in question, 1994 through 1996.

Accordingly, we must **REVERSE** and **REMAND** for the Tax Court to calculate the capital gains tax owed under the former section 1374.

**IT IS SO ORDERED**.