FILED
United States Court of Appeals
Tenth Circuit

January 13, 2009

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MMC CORP.; MIDWEST
MECHANICAL CONTRACTORS,
INC.; M W BUILDERS, INC.;
MIDWEST MECHANICAL
CONTRACTORS OF NEW JERSEY,
INC.; PAHOR AIR CONDITIONING,
INC.,

          Petitioners - Appellants,

    v.

COMMISSIONER OF INTERNAL
REVENUE,

          Respondent - Appellee.

No. 08-9002

---

**APPEAL FROM THE UNITED STATES TAX COURT**
**(T.C. No. 14742-05)**

---

Michael Thompson (Lori J. Sellers, with him on the briefs), Husch Blackwell
Sanders, LLP, Kansas City, Missouri, appearing for Appellants.

Bridget M. Rowan, Attorney, Tax Division (Nathan J. Hochman, Assistant
Attorney General, and Kenneth L. Greene, Attorney, Tax Division, with her on
the brief), Department of Justice, Washington, DC, appearing for Appellee.

---

Before **TACHA**, **BRISCOE**, and **O'BRIEN**, Circuit Judges.

---

**TACHA**, Circuit Judge.

MMC Inc. and related subsidiaries ("MMC")[1] did not pay corporate tax on certain income reported in 2000 and 2001. The Commissioner of Internal Revenue assessed a tax deficiency against MMC for $357,534 for tax year 2000 and a deficiency of $468,068 for tax year 2001. The Tax Court upheld the assessments, concluding that income reported in those years as § 481(a) adjustments is taxable built-in gain under 26 U.S.C. § 1374(d)(5). MMC appeals. We have jurisdiction under 26 U.S.C. § 7482(a)(1), and we AFFIRM.

## I. BACKGROUND

MMC was incorporated under Kansas law as a subchapter C corporation. *See* Kan. Stat. Ann. § 17-6001 et seq.; 26 U.S.C. § 301 et seq. It has always been an accrual-method taxpayer.[2] Until 1997, MMC used an accounting method that valued its customer paper accounts (i.e., its accounts receivable) according to their face value. For tax year 1997, however, MMC adopted mark-to-market accounting. Under this method of accounting, assets are valued as though they

---

[1]These subsidiaries are not treated as separate corporations for federal tax purposes. We therefore reference only MMC for the remainder of this opinion.

[2]For an accrual-method taxpayer, "income is includible in gross income when all the events have occurred which fix the right to receive such income and the amount thereof can be determined with reasonable accuracy." Treas. Reg. § 1.451-1(a); *see also IES Indus., Inc. v. United States*, 253 F.3d 350, 357 (8th Cir. 2001) ("[I]ncome . . . is taxable in the year the income is accrued, or earned, even if it is not received in that year."). In contrast, a cash-basis taxpayer reports income only when it is actually or constructively received. Treas. Reg. § 1.451-1(a); *Worden v. Comm'r*, 2 F.3d 359, 361 (10th Cir. 1993).

were sold for their fair market value on the last day of the tax year.  *See* 26

U.S.C. § 475(a)(2)(A).  This results in the acceleration of loss deductions and

thus permits a taxpayer who uses this method to reduce its taxable income for the

tax year in which those loss deductions are taken.

On its consolidated return for 1997, MMC reported income of $22,319,739.

As a result of using mark-to-market valuation, it claimed a loss and a resulting tax

deduction of $5,349,372 on its customer paper accounts.  Had it not used the

mark-to-market method, MMC would not have been entitled to deduct these

accounts until they actually became worthless.  *See* 26 U.S.C. § 166 (permitting

deductions in the tax year during which a business debt becomes worthless).  The

deduction offset $5,349,372 of MMC's accrued income for 1997, thereby

reducing MMC's corporate income tax liability.

In 1998, Congress amended the tax code to prohibit mark-to-market

valuation of customer paper accounts.  *See* 26 U.S.C. § 475(c)(4).  This change

required MMC to return to the face-value accounting method it had used prior to

1997.  When a business changes its method of accounting, however, that change

often results in the duplication or omission of gross income or deductions.  4

Boris I. Bittker & Lawrence Lokken, Federal Taxation of Income, Estates and

Gifts (hereinafter "Bittker & Lokken"), ¶ 105.12.1 at S105-147.[3]  In this case, the

---

[3]To illustrate, "if a cash-basis taxpayer changes to an accrual method,
income items that are earned but uncollected as of the time of the change are not
(continued...)

Commissioner contends (and MMC does not dispute) that the accounting change would have allowed for two income distortions to MMC's advantage. First, because MMC had already claimed a $5,349,372 loss on its customer paper accounts in 1997, based on hypothetical sales in that tax year, changing its accounting method back to a face-value approach would permit MMC to claim an additional loss (and resulting deduction) if and when the accounts actually became worthless. *See* 26 U.S.C. § 166. If, on the other hand, MMC was fully paid on its accounts in 1998, it would not have had to declare as income the difference between that full payment and the accounts' discounted value: by then, MMC had reverted to the face-value approach under the accrual method and the income—represented by the receivables—had accrued in 1997, not 1998.

To prevent these omissions and duplications, § 481(a) of the tax code requires a taxpayer that has changed its accounting method to account for an adjustment in its income during the tax year of the change. *See* 26 U.S.C. § 481(a); *W. Cas. & Sur. Co. v. Comm'r*, 571 F.2d 514, 518 (10th Cir. 1978). The adjustment is an increase (known as a positive adjustment) or a decrease (known as a negative adjustment) in the taxpayer's income that reflects the omission or duplication of the tax item. *See* Bittker & Lokken ¶ 105.12.1, at S105-147 ("The

[3](...continued)
gross income for any year because they accrued when the taxpayer used the cash method and will be received when the taxpayer uses the accrual method." Bittker & Lokken ¶ 105.12.1, at S105-147. *See supra* note 1 (distinguishing cash-basis and accrual methods of accounting).

remedy for these omissions and duplications is § 481(a), which requires a taxpayer changing methods of accounting to recognize a special gross income or deduction item equal to the net amount of the omitted or duplicated items."). Thus, MMC's reversion to face-value accounting in 1998 required MMC to make a positive § 481(a) adjustment, taking $5,349,372 back into income.

When Congress amended the tax code to prohibit mark-to-market accounting for customer paper accounts, it recognized that taxpayers such as MMC, who had previously utilized this method, would be required to make § 481 adjustments to their income when they changed accounting methods. Presumably in part to ease the burden of requiring a single large positive adjustment (with the resultant increase in the tax due for that tax year), Congress provided that the net amount of any § 481 adjustment required by the new amendments should be taken into account ratably over a four-year period. *See* Internal Revenue Service Restructuring and Reform Act of 1998 ("RRA"), Pub. L. No. 105-206, § 7003(c)(2) (1998). Thus, in determining its income for tax years 1998 through 2001, MMC was required to account for $1,337,344 in 1998, $1,337,341 in 1999, $1,337,339 in 2000, and $1,337,338 in 2001 through four positive § 481 adjustments. These sums would, to use MMC's terminology, "recapture" the $5,349,372[4] deduction taken in 1997 by adding it back into MMC's taxable

---

[4]These figures amount to $5,349,362, not $5,349,372. The parties do not raise this discrepancy, however, and it does not affect the resolution of this

income in increments over the four-year period.

In its tax returns for both 1998 and 1999, MMC properly included in its income $1,337,344 and $1,337,341, respectively. As a C corporation, MMC also properly paid corporate income tax on those sums. Effective January 1, 2000, however, MMC changed its status from a C corporation under 26 U.S.C. § 301 to an S corporation under 26 U.S.C. § 1361. S corporations, unlike C corporations, generally are not taxed on their income; rather, the corporation's income is passed through and taxed to individual shareholders under 26 U.S.C. § 1366. *See Colo. Gas Compression, Inc. v. Comm'r*, 366 F.3d 863, 865 (10th Cir. 2004). Thus, in its 2000 tax return, MMC noted the § 481 adjustment in the amount of $1,337,339 and included that figure in its income, but MMC did not pay corporate-level entity tax on the sum. MMC took the same position in its 2001 tax return with respect to the $1,337,338 adjustment.

The general rule that S corporations are not subject to corporate-level tax, however, contains an exception for "recognized built-in gain." Built-in gain is gain attributable to the time before a corporation converted to S corporation status, 26 U.S.C. § 1374(d)(5)(A), and thus would have been subject to corporate tax had the conversion not taken place. *Colo. Gas Compression, Inc.*, 366 F.3d at 865–66. The Commissioner contends that the income reflected by the 2000 and

[4](...continued)
appeal.

2001 adjustments is taxable built-in gain under 26 U.S.C. § 1374, and accordingly he issued a notice of deficiency to MMC in the amount of $357,534 for 2000 and $468,068 for 2001. MMC filed a petition with the Tax Court, which upheld the deficiency and entered a decision for the Commissioner. MMC appeals.

## II. DISCUSSION

The built-in gain provisions of § 1374 were designed to prevent a taxpayer from using a subchapter S election to avoid corporate tax on gains attributable to periods when the taxpayer was a C corporation, and thus subject to entity-level tax. *See* Bittker & Lokken ¶ 98.6.1, at 98-51. Accordingly, to the extent a corporation has net recognized built-in gain within the recognition period—the ten-year period beginning with the first day of the first taxable year for which the corporation was an S corporation—the corporation will be subject to built-in gains tax. *See* 26 U.S.C. § 1374(a), (d)(7).

The built-in gains tax extends to gain recognized on the disposition of appreciated assets dating from the S corporation's days as a C corporation, but the tax also reaches certain income that is attributable to those days. Section 1374(d)(5)(A) provides that

> [a]ny item of income which is properly taken into account during the recognition period but which is attributable to periods before the 1st taxable year for which the corporation was an S corporation shall be treated as a recognized built-in gain for the taxable year in which it is properly taken into account.

*Id.* § 1374(d)(5)(A).

-7-

Treas. Reg. § 1.1374-4 clarifies the extent to which items of income constitute built-in gain. Specifically, § 1.1374-4(b) explains that when an S corporation accounts for an item of income during the recognition period, the item is built-in gain if the taxpayer would have included the item in its income, assuming the taxpayer used the accrual method for determining its income, prior to the recognition period:

> (b) Accrual method rule--(1) Income items. Except as otherwise provided in this section, any item of income properly taken into account during the recognition period is recognized built-in gain if the item would have been properly included in gross income before the beginning of the recognition period by an accrual method taxpayer . . . .

Treas. Reg. § 1.1374-4(b)(1).

Thus, an item of income is built-in gain under § 1.1374-4(b)(1) if the S corporation had the right to receive the income prior to electing S-corporation status, even if the corporation had not actually or constructively received the income at that point. *See supra* note 2; § 1.1374-4(b)(1), Ex. 1.

Section 1.1374-4 also contains a specific subsection that explains when a § 481 adjustment constitutes built-in gain. Subsection (d) provides:

> Any section 481(a) adjustment taken into account in the recognition period is recognized built-in gain or loss to the extent the adjustment relates to items attributable to periods before the beginning of the recognition period under the principles for determining recognized built-in gain or loss in this section. The principles for determining recognized built-in gain or loss in this section include, for example, the accrual method rule under paragraph (b) of this section.

Treas. Reg. § 1.1374-4(d)(1).

Relying on this subsection, the Tax Court recognized implicitly that the 2000 and 2001 § 481 adjustments were taken into account in the recognition period. Thus, the Tax Court focused solely on whether the adjustments "relate[] to items attributable to periods before" January 1, 2000. *Id.* The Tax Court concluded that the adjustments relate to the $5,349,372 in accrued-but-deducted income in 1997, and therefore the amounts reported in the adjustments constitute built-in gain under § 1.1374-4(d).

On appeal, MMC contends that the Tax Court misconstrued § 1.1374-4 and advances an alternative analysis. Under that analysis, MMC argues that the § 481 adjustments themselves—rather than the 1997 deduction to which the adjustments relate—constitute the "item[s] of income" as that term is used in § 1.1374-4(b). Because § 7003 of the RRA required MMC to make four ratable § 481 adjustments from 1998 to 2001, MMC reasons that the 2000 and 2001 adjustments—"items of income" under § 1.1374-4(b)—could not have been properly included in gross income by an accrual method taxpayer before that point in time. Thus, MMC concludes that the adjustments are not built-in gains.

We disagree with MMC's position, which ignores § 1.1374-4(d) and its direction to focus on the items of income to which the adjustments relate. Contrary to MMC's interpretation of the regulation, the instruction in § 1.1374-4(d) to consider the accrual-method rule set forth in § 1.1374-4(b) does not displace the former subsection; rather, the two subsections must be read together,

giving effect to each one.  In so reading, the Tax Court properly looked first to

§ 1.1374-4(d) and correctly determined that the 2000 and 2001 adjustments relate

to the $5.3 million in income that MMC deducted in 1997.  The next question is

whether that item of income is attributable to the period before MMC elected S

corporation status.  Under § 1.1374-4(d), that question is answered by turning to

the principles set forth in § 1.1374-4(b)—that is, we must decide whether an

accrual-method taxpayer would have included the $5.3 million in its gross income

prior to January 1, 2000.  The answer is clearly yes, as MMC was in fact an

accrual-method taxpayer in 1997 and included that sum in its income before using

the mark-to-market valuation method to deduct it.  Therefore, the adjustment

amounts are built-in gain.

Example 2 of § 1.1374-4(d) illustrates this interplay between § 1.1374-4(d)

and § 1.1374-4(b).  The taxpayer in the example had improperly used an accrual

method of accounting whereby it deducted workman's compensation claims when

they were filed, rather than when they were paid.  The taxpayer later switched

accounting methods and deducted the claims when they were paid.  Accordingly,

the taxpayer had to make a positive § 481 adjustment to return to its income the

amount of claims filed, but unpaid, at the time of the accounting change in order

to prevent duplicate deductions for the claims.  The example clarifies that the

adjustment relates to the previously taken deductions, and that to the extent those

deductions were taken before the recognition period, they are built-in gain

because the deductions "are items attributable to periods before the beginning of the recognition period under the principles for determining built-in gain or loss in this section." Treas. Reg. § 1.1374-4(d).

Although they were decided before § 1.1374-4 was enacted, the only two existing cases on point further support our conclusion. In *Argo Sales Co., Inc. v. Commissioner*, 105 T.C. 86 (1995), the taxpayer changed its accounting method and was required to make a § 481 positive adjustment in six annual installments. *Id.* at 87. After three years, however, the taxpayer elected to convert from a subchapter C corporation to a subchapter S corporation. *Id.* at 88. Thereafter, the taxpayer included the § 481 adjustments in its income but did not pay corporate tax on those amounts. *Id.* The Commissioner determined that the final three § 481 adjustments were subject to built-in gains tax under 26 U.S.C. § 1374(d). *Id.* The Tax Court agreed. *Id.* at 94. The court reasoned that

> Petitioner was permitted to spread its section 481(a) adjustment over 6 years. This was meant to ease the burden petitioner would otherwise face if it had been required to recognize the entire section 481(a) adjustment in the year of change. Petitioner would use this 6-year period and a subsequent subchapter election, not to ease the burden of the corporate tax with respect to the as yet unrecognized income, but rather to wipe out that portion of the burden entirely. In our opinion, section 1374 was designed, in part, to avoid just such a result.

*Id.* at 91 (footnote omitted). The court went on to note that its conclusion was consistent with § 1.1374-4(d), although that regulation had not been in effect for the tax years involved in the case. *Id.* at 92.

Six days after the decision in *Argo Sales*, the Tax Court reached the same conclusion on materially indistinguishable facts. *See Rondy, Inc. v. Comm'r*, 70 T.C.M. (CCH) 332 (1995). In *Rondy*, the taxpayer converted to an S corporation before taking the last of four ratable § 481 adjustments and therefore did not pay corporate tax on the amounts included as income after it became an S corporation. *Id.* at *1. The Tax Court noted that the issue was essentially the same as that presented in *Argo Sales*, and held that the § 481 adjustments were built-in gain. *Id.* at *4–5.

Accordingly, we hold that the Tax Court correctly applied Treas. Reg. § 1.1374-4(d) and (b) in concluding that the amounts of the 2000 and 2001 § 481 adjustments are built-in gain.

### III.  CONCLUSION

The decision of the Tax Court is AFFIRMED.