# United States Court of Appeals for the Federal Circuit

---

**LARRY J. HACKER AND NANCY A. HACKER,**
*Plaintiffs-Appellants,*

**v.**

**UNITED STATES,**
*Defendant-Appellee.*

---

2009-1527

---

Appeal from the United States Court of International Trade in case No. 07-00008, Senior Judge Thomas J. Aquilino, Jr.

---

Decided: July 29, 2010

---

DANIEL P. WENDT, Miller & Chevalier Chartered, of Washington, DC, argued for plaintiffs-appellants. With him on the brief was DAVID H. HARDIN.

MATTHEW H. SOLOMSON, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and FRANKLIN E. WHITE, JR., Assistant Director.

---

Before DYK, MAYER, and SCHALL, *Circuit Judges.*

MAYER, *Circuit Judge.*

Larry J. and Nancy A. Hacker appeal a judgment of the United States Court of International Trade sustaining a decision by the United States Department of Agriculture ("USDA") denying their application for trade adjustment assistance ("TAA") cash benefits. *See Hacker v. United States*, 31 Int'l Trade Rep. 1632 (Ct. Int'l Trade 2009). We affirm.

## BACKGROUND

The Hackers are farmers who harvest Concord and Niagara grapes in Berrien County, Michigan. After a 2001 drought destroyed a significant portion of their grape crops, they received an $80,000 disaster relief payment from the USDA. The Hackers applied for this payment on December 5, 2003, and received it on May 17, 2004.

In 2004, grape farmers in the United States were faced with an influx of low-priced grapes from Argentina. Accordingly, in March 2006, the Secretary of the USDA certified Michigan Concord grape producers for TAA benefits for the 2004 marketing year. *See* 71 Fed. Reg. 14,677 (Mar. 23, 2006). The Hackers thereafter timely applied for TAA cash benefits, but their application was denied on the ground that they had failed to establish that their net farm income had declined between 2003 and 2004.

The Hackers then appealed to the Court of International Trade pursuant to 19 U.S.C. § 2395 and 28 U.S.C. § 1581(d)(4). Subsequently, pursuant to an agreement by the parties, the Court of International Trade remanded the case to the USDA. On April 10, 2007, the USDA issued a remand determination, rejecting the Hackers'

application for TAA benefits on the ground that their net farm income, as reported on their federal income tax returns, had not declined between 2003 and 2004. The Hackers then filed an amended complaint with the Court of International Trade and moved for judgment upon the agency record. They argued that the USDA should not have relied solely upon their income tax returns in determining whether their net farm income had declined and that the agency erred in including the $80,000 disaster relief payment in calculating their 2004 net farm income. The Court of International Trade rejected these arguments, however, and sustained the USDA's decision denying the Hackers' application for TAA cash benefits.

The Hackers then timely appealed to this court. We have jurisdiction under 28 U.S.C. § 1295(a)(5).

### DISCUSSION

The Trade Act of 1974, Pub. L. No. 93-618, 88 Stat. 1978 (1975), provided TAA benefits to U.S. workers who had been adversely affected by foreign competition. This trade assistance program was made available to farmers in 2002. *See* Trade Act of 2002, § 141, Pub. L. 107-210, 116 Stat. 933, 946-53. Congress recently made significant changes to the TAA program pursuant to the American Recovery and Reinvestment Act of 2009, Pub. L. 111-5, §§ 1856, 1881-94, 123 Stat. 115.[1]

In 2006, when the Hackers applied for TAA benefits, a farmer seeking to qualify for cash assistance was required to: (1) establish that he belonged to an industry certified by the Secretary of the USDA as having been harmed by

---

[1]  The TAA statute no longer requires farmers to demonstrate a decline in net farm income in order to qualify for cash benefits. *See* 19 U.S.C. § 2401e (2009).

increased volumes of low-priced imports, (2) show that he met certain gross income limitations, and (3) demonstrate that he had suffered a decline in "net farm income" in the year for which he was seeking benefits. *See* 19 U.S.C. § 2401e (2006).

The only issue presented on appeal is whether the Court of International Trade correctly upheld the USDA's determination that the Hackers' were ineligible for TAA cash benefits because their net farm income was higher in 2004 than it was in 2003. The Hackers acknowledge that their net farm income, as reported on Schedule F of their federal income tax returns, was higher in 2004 than it was in 2003. They argue, however, that they are entitled to TAA cash benefits because the USDA should have recalculated their income on an accrual basis, thereby shifting the $80,000 disaster relief payment they received in 2004 to an earlier tax year.

We find this argument unpersuasive for several reasons. First, because the USDA's regulatory definition of "net farm income" was promulgated pursuant to an express delegation of congressional authority, it is entitled to broad deference from this court. Second, as we explained in *Steen v. United States*, the TAA statute was intended to provide cash benefits to those farmers and fishermen who had suffered an "overall loss in their farming (or fishing) income" as a result of competition from imported goods. 468 F.3d 1357, 1362 (Fed. Cir. 2006). Because the Hackers' total net income from all farm sources increased, rather than decreased, between 2003 and 2004, they did not suffer an "overall loss" in their farming income. Finally, even assuming *arguendo* that the USDA had an obligation to consider whether a TAA applicant's net farm income had declined when calculated on an accrual basis, the Hackers failed to provide the documentation necessary to certify that their

net income, calculated on an accrual basis, was lower in 2004 than it was in 2003. *See* 7 C.F.R. § 1580.301(e)(6) (2006).

## I.

"Congress expressly delegated to the Secretary of Agriculture the responsibility to determine 'net farm income'" for purposes of awarding TAA cash benefits. *Steen*, 468 F.3d at 1362. The TAA statute specified that cash benefits were available only if a "producer's net farm income (*as determined by the Secretary*) for the most recent year [was] less than the producer's net farm income for the latest year in which no adjustment assistance was received by the producer . . . ." 19 U.S.C. § 2401e(a)(1)(C) (2006) (emphasis added). Subsequently, pursuant to formal notice and comment rulemaking, the Secretary promulgated a regulation defining "net farm income" for TAA purposes as the net farm income reported on an applicant's federal income tax return. *See* 7 C.F.R. § 1580.102 (2006) ("Net farm income means net farm profit or loss, excluding payments under this part, reported to the Internal Revenue Service for the tax year that most closely corresponds with the marketing year under consideration.").

"If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843-44 (1984) (footnote omitted); *see Steen*, 468 F.3d at 1363 (emphasizing that the USDA's definition of "net farm income" must be given "broad deference"). We see nothing in the agency's regulatory definition of "net farm income"

which is arbitrary, unreasonable or inconsistent with the objectives of the trade assistance statute. *See Steen*, 468 F.3d at 1363 (concluding that the USDA's decision to define "net fishing income" as the net fishing income reported on a TAA applicant's tax return was reasonable). To the contrary, the net farm income reported on a farmer's federal tax return should, quite obviously, correspond to his actual income from farming activities.[2] Although many taxpayers are permitted to report income on either an accrual or a cash basis, the reporting method selected must "clearly reflect" the income the taxpayer has received. *See* 26 U.S.C. § 446(b). Thus, regardless of whether a farmer elects to report income on an accrual or a cash basis, use of income tax data provides a reasonably accurate—as well as an administratively efficient—means of identifying those farmers who have suffered a loss in net farm income for TAA eligibility purposes. *See Gulf Oil Corp. v. Hickel*, 435 F.2d 440, 446 (D.C. Cir. 1970) ("An agency confronted with a complex task may rationally turn to simplicity in ground rules, and administrative

---

[2] "For an accrual-method taxpayer, income is includible in gross income when all the events have occurred which fix the right to receive such income . . . . In contrast, a cash-basis taxpayer reports income only when it is actually or constructively received." *MMC Corp. v. Comm'r*, 551 F.3d 1218, 1218 n.2 (10th Cir. 2009) (citations and internal quotation marks omitted). Once a taxpayer has elected to use an accounting method for tax reporting purposes, he generally can not change his method of accounting without first obtaining the consent of the Internal Revenue Service ("IRS"). *See* 26 U.S.C.§ 446(e). Here, the Hackers elected to report their farm income on a cash basis for income tax purposes, and they offer no persuasive reason why they should now be permitted to use the accrual method to calculate net farm income for TAA eligibility purposes.

convenience, at least where no fundamental injustice is wrought."); *see also Dixon v. Love*, 431 U.S. 105, 114 (1977) (recognizing "the substantial public interest in administrative efficiency").

*Steen* did acknowledge that there might be certain anomalous situations in which it would be inappropriate to rely exclusively on income tax information in determining net farm or fishing income. 468 F.3d at 1363-64. We explained that there could be some circumstances in which the net fishing or farm income reported on an applicant's tax returns included income from sources other than fishing or farming or failed to account for all fishing or farming income. *Id.* In such circumstances, the agency might reasonably be required, in determining net farm income, to consider other financial information submitted by an applicant and not to rely "solely and inflexibly" on the net income figures reflected on the applicant's tax returns. *Id.* at 1364.

Here, however, the Hackers point to no evidence demonstrating that the net farm income reported on their tax returns included non-farm income or failed to include all of their farm income. Because the $80,000 disaster relief payment the Hackers received in 2004 was intended to compensate them for crops lost as a result of drought, they properly included it in the calculation of their 2004 net farm income.[3] It is well-established that crop disaster

---

[3]    Benefit payments that a farmer has previously received under the TAA program are specifically excluded from the calculation of his net farm income for purposes of determining TAA eligibility. *See* 7 C.F.R. § 1580.102 (2006) ("Net farm income means net farm profit or loss, *excluding payments under this part*, reported to the Internal Revenue Service for the tax year that most closely corresponds with the marketing year under consideration." (emphasis added)). The $80,000 payment the

payments constitute farm income in that "[a]gricultural entitlement payments which result from the actual disposition of a planted crop are proceeds of that crop." *In re Schneider*, 864 F.2d 683, 685 (10th Cir. 1988); *In re Munger*, 495 F.2d 511, 513 (9th Cir. 1974) (Government farm subsidy payments are "proceeds" from crops.); *In re Shore Ltd.*, No. 99-406892, 2001 Bankr. LEXIS 2176 at *8 (Bankr. D. Kan. June 4, 2001) ("Historically, courts have held that disaster payments and governmental entitlement payments are proceeds of the debtor's crops."). There is no dispute, moreover, that taxpayers using the cash method of income reporting must report income in the year it is received. *See, e.g.*, *Healy v. Comm'r*, 345 U.S. 278, 281 (1953). Because the Hackers received the crop disaster payment in 2004, they were required to include that payment in the calculation of their 2004 net farm income. *See* IRS Revenue Ruling 67-404 (1967) (explaining that a farmer who reports income on a cash basis must report government subsidy payments in the year they are received, even if the subsidy payments relate to crops lost in earlier tax years); IRS Revenue Ruling 65-98 (1965) ("A taxpayer who reports income on the cash receipts and disbursement method, and who receives payments under the provisions of the United States Department of Agriculture '1963 Feed Grain Program,' shall include the amount of the advance and final payments in gross income when they are received, or when they are made available, whichever is the earlier."). Thus, this is not a case in which the net income figure reported on a TAA applicant's tax return includes income

---

Hackers received in 2004, however, was not a trade assistance payment, but was instead made pursuant to the USDA's crop disaster program.

from non-farm sources or fails to include income from all farm sources.

## II.

Furthermore, allowing the Hackers to exclude the $80,000 crop disaster payment from the calculation of their 2004 net farm income would be contrary to the purpose of the TAA statute, which was designed to provide cash benefits "to persons whose *overall* financial well-being has suffered as a result of import competition." *Steen*, 468 F.3d at 1362 (emphasis added). Because those farmers or fishermen who do not experience an overall decline in net farm or fishing income have presumably "successfully adjusted to the competition from imports, there is no reason to suppose that Congress would want them to share in the cash benefits afforded under the [TAA] program." *Id.*

In *Steen*, the USDA denied TAA cash benefits to a commercial fisherman because he had failed to show that his net fishing income was lower in 2002 than it was in 2001. *Id.* at 1360. On appeal, the fisherman argued that the agency had erred in denying his application for benefits because although his total income from all fishing activities had increased between 2001 and 2002, his income from the fishing of Pacific salmon—the commodity that had been certified for TAA benefits—had decreased. This court, however, rejected that argument, explaining that when Congress used the term "net farm income" in the TAA statute "it meant to encompass income from *all* farm products, not simply adversely affected commodities." *Id.* at 1361 (emphasis in original). Accordingly, because there had been no "overall loss" in income from all fishing activities, the commercial fisherman was not eligible to receive TAA benefits. *Id.* at 1362.

A similar analysis applies here. Although the Hackers' income from actual grape production was allegedly lower in 2004 than it was in 2003, their total farm income increased in 2004 due to their receipt of the $80,000 crop disaster payment. Because the Hackers did not experience an "overall loss" in farm income between 2003 and 2004, the USDA correctly rejected their application for TAA cash benefits.

## III.

Finally, even assuming *arguendo* that the USDA had any obligation to consider whether a TAA applicant's net farm income had declined when calculated on an accrual rather than a cash basis, the Hackers failed to provide the documentation necessary to certify that their net farm income, calculated on an accrual basis, was lower in 2004 than it was in 2003. In 2006, a TAA applicant was required to certify that his "net farm income" had declined in the year for which he was seeking TAA benefits. 7 C.F.R. § 1580.301(b)(4)(2006). To comply with this requirement, an applicant had to provide either "[s]upporting documentation from a certified public accountant or attorney," or "[r]elevant documentation and other supporting financial data, such as financial statements, balance sheets, and reports prepared for or provided to the Internal Revenue Service or another U.S. Government agency." 7 C.F.R. § 1580.301(e)(6). The Hackers, however, failed to provide "[s]upporting documentation from a certified public accountant or attorney" establishing what their net farm income would have been in 2003 and 2004 if that income had been calculated on an accrual rather than a cash basis.[4] Nor did they provide

---

[4] The Hackers' reliance on the *Anderson* cases from the CIT is misplaced. *See Anderson v. United States*, 462 F. Supp. 2d 1333 (Ct. Int'l Trade 2006) ("*Anderson I*");

comprehensive financial statements or balance sheets demonstrating that their net farm income, calculated on an accrual basis, was lower in 2004 than it was in 2003. Instead, they simply argued for an *ad hoc* shifting of certain income and expense items to different tax years. Because the Hackers did not submit the supporting documentation required by 7 C.F.R. § 1580.301(e)(6), they failed to certify that their total net farm income, calculated on an accrual basis, was lower in 2004 than it was in 2003. The USDA, therefore, correctly denied their application for TAA cash benefits.

CONCLUSION

Accordingly, the judgment of the United States Court of International Trade is affirmed.

---

*Anderson v. United States*, 469 F. Supp. 2d 1300 (Ct. Int'l Trade 2006) ("*Anderson II*"); *Anderson v. United States*, 493 F. Supp. 2d 1288 (Ct. Int'l Trade 2007) ("*Anderson III*"). As a preliminary matter, it should be noted that the Hackers, unlike the TAA applicant in the *Anderson* cases, failed to submit tax forms prepared by a certified public accountant establishing what their net farm income would have been using an accrual method of accounting. *See Anderson III*, 493 F. Supp. 2d. at 1292. More fundamentally, to the extent that *Anderson I* suggests that the USDA has an obligation to recalculate, on accrual basis, the net farm income of all TAA applicants, it is inconsistent with our decision in *Steen*. As discussed previously, *Steen* held that, absent a showing that income tax data includes non-farm income or fails to include all farm income, the USDA can properly rely on the net farm income reported on an applicant's tax returns in determining whether he has suffered a decline in net farm income. 468 F.3d at 1363 (rejecting the argument that when determining "net farm income" for TAA eligibility purposes, the USDA "is barred from using the standards applied under the Internal Revenue Code as a basis for making that determination").

COSTS

No costs.

**AFFIRMED**