DEBRA A. SCHAUMBERG & another[1] vs. GARY FRIEDMANN.

No. 06-P-1841.

Middlesex. January 17, 2008. - June 13, 2008.

Present: KANTROWITZ, TRAINOR, & VUONO, JJ.

*Contract,* Performance and breach, Sale of real estate, Damages. *Real Property,*
Purchase and sale agreement, Condominium, Record title. *Consumer Protec-
tion Act,* Unfair or deceptive act, Sale of condominium unit, Trade or com-
merce, Demand letter, Attorney's fees. *Damages,* Breach of contract,
Breach of sales contract, Attorney's fees.

At a civil trial, sufficient evidence existed to support the conclusion that the
defendant acted unfairly and deceptively, in violation of G. L. c. 93A, in
refusing to provide marketable title to a residential condominium unit that
he had agreed to sell to the plaintiffs, and in failing to return the plaintiffs'
deposit, plus interest, when the purchase and sale did not occur, where
there was no good faith dispute that money was owed or performance of
some kind was due from the plaintiffs, and where the record amply sup-
ported the finding that the defendant routinely purchased and sold residential
property and thus was engaged in trade or commerce [56-57]; further, the
judge properly awarded treble damages and reasonable attorney's fees and
costs [57-59].

CIVIL ACTION commenced in the Superior Court Department on
December 23, 2003.

The case was heard by *Wendie I. Gershengorn,* J.

*Charles P. Kindregan* for the defendant.

*Marie F. Mercier* for the plaintiffs.

VUONO, J. The defendant, Gary Friedmann, appeals from an
amended judgment against him on a claim alleging that he
breached a purchase and sale agreement and acted unfairly and
deceptively, in violation of G. L. c. 93A, by refusing to provide
marketable title to a residential condominium unit that he had
agreed to sell to the plaintiffs, Debra A. Schaumberg and Reza

_____
[1]Reza Dana.

Dana, and by failing to agree to a return of the $100,000 deposit, plus interest, to the plaintiffs when the purchase and sale did not occur.[2] We affirm.

*Facts.* We summarize the facts as found by a Superior Court judge following a jury-waived trial. On September 29, 2003, the plaintiffs entered into a purchase and sale agreement to purchase from the defendant a condominium unit located in Cambridge. The closing was scheduled for Monday, November 3, 2003. On the preceding Friday, the plaintiffs learned that their lender's title insurance company had discovered potentially serious issues with the title. As a result, the plaintiffs requested an extension of the closing date. Under the terms of the purchase and sale agreement, if the defendant was unable to deliver good title at closing, he could elect to extend the closing for thirty days in order to correct title defects. Notwithstanding the extension provision that provided the defendant with the opportunity to extend the closing date in order to take care of any title defects, the defendant rejected all requests from the title company, the plaintiffs' attorney, and the designated escrow agent, Hammond Residential Real Estate (Hammond),[3] to extend the closing date.

Over the weekend, the plaintiffs retained new counsel, who conducted a partial title search on the morning of the closing. The search disclosed a number of encumbrances on the title, including a petition to foreclose a tax lien from the city of Cambridge; a tax taking from the city of Cambridge; and two writs of attachment, recorded only a few weeks previously, concerning ongoing litigation in the Boston Municipal Court. On Monday, November 3, 2003, the defendant arrived at the Middlesex County registry of deeds (registry) at the appointed time, and the plaintiffs' counsel informed him that there were some title issues to resolve. The defendant responded by becoming "aggressive and agitated and stated that the encumbrances were 'invalid.' " In addition, the deed that the defendant presented purported to convey title from a partnership in which the

---

[2] The amended complaint sought declaratory relief under G. L. c. 231A to secure the return of the deposit, and damages pursuant to G. L. c. 93A. The defendant filed several counterclaims that the judge dismissed. On appeal, the defendant raises no issues concerning the dismissal of his counterclaims.

[3] Hammond, a nominal defendant below, is not a party to this appeal.

defendant was not the named general partner, and the defendant failed to present a partnership agreement or a power of attorney authorizing him to convey title on behalf of the partnership.

The tenor of the proceedings rapidly deteriorated. Although the defendant offered to place the sale proceeds in an escrow account until the title issues were resolved, the plaintiffs declined the offer because the amount needed to cure the encumbrances was unknown and they were uncertain whether the defendant had authority to act on behalf of the partnership. Furthermore, as the judge noted, the defendant made this and other offers in a "hostile, sometimes threatening and irregular manner." After several hours of discussion, the parties left the registry without having completed the transaction.

The same afternoon, the plaintiffs wrote the defendant a letter stating that they were still interested in purchasing the condominium unit and forwarded copies of the bank checks that they had brought to the closing. The defendant responded with a series of letters stating that the plaintiffs' attorney had given them incorrect advice, that they would be forced to testify before the "State Disciplinary Board," and that they risked losing their $100,000 deposit "as liquidated damages." He suggested that they hire the "best malpractice firm in the state," and refused to carry through with the transaction until the plaintiffs had obtained new counsel and "a few conditions are met."

During the month of November, 2003, the defendant continued to make new demands. He refused to participate in clearing any of the title defects and failed to produce any partnership documents to show that he was authorized to convey title to the property. When advised by the plaintiffs' counsel that the purchase and sale agreement was still in effect and legally binding, the defendant replied that the plaintiffs were in breach of the agreement and that he would only consider selling the unit in January if the plaintiffs obtained financing from a different lender, concluding that, "I would seriously recommend that if your client wants to occupy this property in the near future that they should realize the 'bind' they are in and attempt to resolve this amicably."

On December 2, 2003, the plaintiffs' counsel notified the defendant that the closing would take place at noon on December 3, 2003, thirty days after the initially scheduled closing. The defend-

ant responded by leaving a voice-mail message stating that he would not attend and that the plaintiffs would have to sign a new purchase and sale agreement if they wished to purchase the condominium unit. The plaintiffs appeared at the registry at the designated time, with bank checks for the purchase price, but the defendant did not appear. The defendant later refused to sign a release authorizing Hammond to return the plaintiffs' deposit and did not respond to a G. L. c. 93A demand letter that counsel sent on December 23, 2003.

*Disposition.* Based on these facts, the judge found and concluded that the defendant had breached the purchase and sale agreement by failing to provide " 'good, clear and marketable title' free from encumbrances." The judge made a related finding, well-supported in the record, that the defendant was in breach of par. 10 of the purchase and sale agreement, which required the defendant to provide the plaintiffs with written notice of the title defects at or before the closing. The judge also found that the defendant had breached the agreement by failing and refusing to authorize Hammond to return the $100,000 deposit to the plaintiffs.

The judge further determined that the defendant's actions in refusing "to clear the title defects while threatening suit against the plaintiffs and their representatives" were "a knowing, willful violation of G. L. c. 93A." Specifically, the judge ruled:

> "Upon learning that there may [have] be[en] some issues with the plaintiffs' financing (issues which never materialized), the defendant viewed the Agreement as an opportunity to extort money from the plaintiffs. This is evidenced through [the defendant's] refusal to clear the title defects while threatening suit against the plaintiffs and their representatives. In addition, [the defendant] repeatedly made demands to the plaintiffs outside the scope of the original agreement and threatened to keep the plaintiffs' $100,000 deposit as leverage to re-negotiate the original agreement for greater personal gain. These actions were a knowing, willful violation of contractual obligations taken for the purpose of securing unwarranted benefits from the plaintiffs in violation of G. L. c. 93A."

The judge further ruled that the c. 93A demand letter sent by

the plaintiffs was adequate and that the defendant's failure to respond "was done unreasonably and in bad faith in violation of G. L. c. 93A, § 9(3)."

The judge ordered that the money held in escrow be returned to the plaintiffs. In the amended final judgment, the judge included, pursuant to G. L. c. 231, § 6C, an award of prejudgment interest on the $100,000 deposit at a rate of twelve percent, in the amount of $17,367.[4] Additionally, because the judge found that there was a violation of G. L. c. 93A, she ordered that the inspection and appraisal fees be trebled. The amount of these fees was $975; the trebled amount was $2,925. Finally, the amended final judgment contained an award of attorney's fees in the amount of $58,420.

*Discussion.* The defendant argues that even if he did commit a breach of the agreement, the breach did not constitute a violation of G. L. c. 93A. Although the defendant is correct in asserting that not every breach of a contract is a violation of G. L. c. 93A, nothing in the record here supports the defendant's related contention that there was a "good faith dispute [that] money was owed or performance of some kind" was due from the plaintiffs. The defendant's reliance on *Duclersaint* v. *Federal Natl. Mort. Assn.*, 427 Mass. 809, 814 (1998), is misplaced. The case of *Duclersaint* involved a foreclosure sale pursuant to G. L. c. 183, § 27, in which the plaintiff sought to recover a surplus from the defendant, who had purchased the property at a foreclosure sale. In contrast to that case, in which the parties has a "genuine difference of opinion about whether there was a surplus," *ibid.*, here, presented with recorded encumbrances on the title, the defendant denied the validity of the documents, yet refused to do anything to demonstrate that the liens were either invalid or had been released. There is also no good faith justification for the defendant's refusal to authorize the return of the $100,000 deposit to the plaintiffs.

The defendant's contention that he was not engaged in trade or commerce, and therefore, that G. L. c. 93A does not apply to this transaction, is similarly unavailing. The record amply supports the judge's finding that the defendant, who is not a Mas-

---

[4]On appeal, the defendant does not raise any arguments concerning the return of the deposit, with interest, to the plaintiffs.

sachusetts resident, routinely purchased and sold residential property in Massachusetts as well as other States, operating under the name "Friedmann Financial Company." He never lived in the condominium unit in question here which, according to his testimony at trial, he had purchased as an investment in 1983. The defendant also testified that during the period from 1981 to the time of trial, he had sold seven other investment properties in Cambridge alone. Furthermore, title to the condominium unit, according to registry and city records, was held by "Friedmann Financial Company," and the defendant signed the purchase and sale agreement as "G. Friedmann d/b/a Friedmann Financial Co." The case of *Nei* v. *Burley*, 388 Mass. 307, 317-318 (1983), upon which the defendant relies, is not to the contrary. In *Nei*, the sellers made a one-time sale of a single-house lot, from a larger tract of land they had inherited, to pay for their children's college education; the sale at issue here was a routine business transaction.

Since, as the judge found, the defendant knowingly and wilfully violated his obligations under the purchase and sale agreement "for the purpose of securing unwarranted benefits from the plaintiffs," and "unreasonably and in bad faith" refused to respond to the plaintiffs' c. 93A demand letter, her decision to award treble damages, and reasonable attorney's fees and costs, was appropriate. See G. L. c. 93A, § 9; *Massachusetts Employers Ins. Exch.* v. *Propac-Mass, Inc.*, 420 Mass. 39, 43 (1995).

The defendant asserts that the judge erred in awarding damages for amounts expended by the plaintiffs prior to the closing. Reliance damages are intended to compensate the injured party for "expenditures made in reliance upon a contractual obligation that was not performed." *VMark Software, Inc.* v. *EMC Corp.*, 37 Mass. App. Ct. 610, 611 n.2 (1994). Here, the plaintiffs incurred inspection and appraisal fees, as well as the attorney's fees to prepare for the closing, in reliance on purchasing the condominium unit. Because reliance damages may be awarded under G. L. c. 93A, the judge properly included the appraisal and inspection costs as damages. See *Twin Fires Inv., LLC,* v. *Morgan Stanley Dean Witter & Co.*, 445 Mass. 411, 427 (2005).

The defendant complains that the award of attorney's fees is

excessive because it improperly includes costs from the plaintiffs' previous attorneys to prepare for the closing. Although the attorney's fees for the closing should have been awarded as reliance damages rather than under the rubric of attorney's fees in the G. L. c. 93A action, the judge's categorization leaves the defendant no cause for complaint; if the judge had classified these fees as damages, they could subsequently have been trebled. See *Siegel* v. *Berkshire Life Ins. Co.*, 64 Mass. App. Ct. 698, 703-704 (2005), *S.C.*, 70 Mass. App. Ct. 318 (2007).

In addition, there is no merit to the defendant's claim that the judge awarded the requested fees "without analysis or explanation." After the plaintiffs submitted their fee request, the sole objection raised to the fees requested was that the fees incurred before the date of the c. 93A demand letter should not be awarded; there was no suggestion that the fees were unwarranted for any other reason. In determining the fee amount, the judge had before her copies of detailed, itemized daily invoices, as well as an affidavit from the plaintiffs' lead counsel, a partner in her firm for over ten years, summarizing the charges and stating that she had reviewed the invoices and hours entered and attested to their validity.

Lastly, the defendant argues that "[t]he alleged unfair and deceptive acts were distinguishable from the issue of entitlement to the escrowed funds," and consequently, the fees expended to secure the return of the deposit should not have been awarded. The judge did not err in including the fees expended because the defendant refused to sign a release for the plaintiffs' $100,000 deposit for several years after the purchase and sale agreement had terminated, until ordered to do so after trial. This conduct was part of "a single chain of events," *DiMarzo* vs. *American Mut. Ins. Co.*, 389 Mass 85, 106 (1983), quoting from *Simon* v. *Solomon*, 385 Mass. 91, 112 (1982), resulting in the plaintiffs' G. L. c. 93A claim, and the fees attributable to attempting to obtain the release of those funds should be included in the award of attorney's fees. The case of *DiMarzo, supra,* rejecting the argument that "the judge should have limited attorneys' fees to the services devoted to the c. 93A counts," that the defendant attempts to distinguish, applies here. See *Drywall Sys., Inc.* v. *ZVI Constr. Co.*, 435 Mass. 664, 673 (2002), quoting from

*DiMarzo, supra* ("Where claims 'represent various elements of damage arising from a single chain of events,' however, the attorney's fees need not be limited to G. L. c. 93A claims"). See also *Hanover Ins. Co.* v. *Sutton*, 46 Mass. App. Ct. 153, 177 (1999); *Clamp-All Corp.* v. *Foresta*, 53 Mass. App. Ct. 795, 813 (2002); Gilleran, The Law of Chapter 93A § 11.19 at 618 (2d ed. 2007).

The plaintiffs have requested appellate attorney's fees; we allow that request. The plaintiffs may file a petition within fourteen days of the date of the rescript, together with supporting materials, and the defendant shall have fourteen days thereafter to respond. See *Fabre* v. *Walton*, 441 Mass. 9, 10-11 (2004). The plaintiffs are to receive double costs.

*Amended judgment affirmed.*