# United States Court of Appeals

## For the First Circuit

Nos. 06-2206, 09-1479

HADDAD MOTOR GROUP, INC.;
GEORGE HADDAD,

Plaintiffs, Appellees,

v.

KARP, ACKERMAN, SKABOWSKI & HOGAN, P.C.;
PETER J. HOGAN,

Defendants, Appellants.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Torruella, Boudin and Howard,

Circuit Judges.

John G. Neylon with whom Neylon & O'Brien, P.A. was on
consolidated brief for appellants.
　　Paul M. Harris with whom Lauren R. Holland and Murtha Cullina,
LLP were on consolidated brief for appellees.

April 20, 2010

**BOUDIN**, <u>Circuit Judge</u>. Haddad Motor Group ("HMG"), a car dealership in Pittsfield, Massachusetts, sued its former accounting firm, Karp, Ackerman, Skabowski & Hogan, P.C. ("KASH"), and one of the partners, Peter Hogan ("Hogan"), over allegedly negligent tax advice. HMG recovered damages and attorneys' fees. The accountants' appeal is now before us. We summarize the background events and the proceedings, drawing primarily from the opinion of the district court and a report by the magistrate judge.[1]

George Haddad, the owner of HMG, retained KASH as HMG's accountant in December 1997. Just over six months before, HMG had executed a so-called "margin-against-the-box" transaction to finance the purchase of a second car dealership. At the time, HMG owned shares of BankBoston stock (then worth almost $360,000); to make use of the stock without immediately incurring a capital gains tax by selling it, HMG borrowed an equivalent amount of the same stock from PaineWebber (paying interest for this privilege and pledging to replace the borrowed shares with its own shares at a later date).

HMG then sold the borrowed shares to finance the purchase of the dealership. This effectively deferred capital gains taxes

---

[1]The opinion and report are unreported. The district court judge who presided over the pre-trial and trial proceedings became terminally ill, and a successor district judge took over after the merits were resolved but before a final decision on attorneys' fees and costs, which had been referred to a magistrate judge. The successor district court judge approved a report from the magistrate judge awarding attorneys' fees and costs.

on its own shares until the transaction was closed out by a later transfer of HMG's shares to PaineWebber to replace the borrowed ones that had been sold. Thus, eventually HMG had to relinquish its shares and realize the gains, and the cost of delaying this realization was the "rent" that it had to pay PaineWebber until the shares it had loaned HMG were replaced by HMG's own shares.

In late 1997 and during 1998, Haddad and Hogan had discussions on the tax position of Haddad and his dealerships, the possible closing of the "margin-against-the-box" transaction, the conversion of HMG from a Subchapter C to a Subchapter S corporation, and the use of losses of the new dealership to offset gains to HMG. A Subchapter C corporation pays taxes on its income; a Subchapter S corporation does not: its income is attributed to its shareholders, who report that income and pay taxes on it personally. See A.W. Chesterton Co., Inc. v. Chesterton, 128 F.3d 1, 3 (1st Cir. 1997).

In December 1998, George Haddad and HMG's controller, Desiree Croteau, met with KASH's Hogan; both sides agree that at this meeting they discussed whether HMG should close-out the "margin-against-the-box" transaction and whether HMG should convert to a Subchapter S corporation. Just what advice was given was disputed at trial--Haddad blamed KASH for misadvising him on these steps--but is not critical to this appeal because the accountants

were found liable because of the timing of tax payments, not because of the transactions themselves.

On February 11, 1999, HMG closed out the "margin-against-the-box" transaction, realizing a capital gain of approximately $311,000 on its BankBoston stock. On March 15, 1999, HMG converted to a Subchapter S corporation retroactive to January 1, 1999. Although normally a Subchapter S corporation is not a tax-paying entity, HMG became liable for a so-called "built-in-gains" tax of approximately $135,000 on the gains because HMG had converted from Subchapter C to Subchapter S status and the stock dated from when HMG was a Subchapter C corporation. The built-in-gains tax could have been avoided if HMG had converted to Subchapter S status and kept the transaction open for 10 years.[2]

The "margin-against-the-box" transaction was closed in the first quarter of 1999, which meant HMG should have estimated its built-in-gains tax liability at that time and begun making or increasing quarterly installment payments to the IRS based on that

_____

[2]A built-in-gains tax applies to certain asset sales made by a company that converts from a Subchapter C to a Subchapter S corporation and is designed to limit the use of conversions to avoid paying tax on gains; the tax applies to sales of appreciated assets "dating from the S corporation's days as a C corporation" and applies so long as the asset is sold within 10 years of the conversion. See 26 U.S.C. § 1374(a), (d)(7) (2006); MMC Corp. v. C.I.R., 551 F.3d 1218, 1220-21 (10th Cir. 2009). Technically, the built-in-gains tax could also have been avoided by closing the "margin-against-the-box" transaction before converting to a Subchapter S corporation, but then HMG would have been a Subchapter C corporation when the capital gains were realized, and so presumably would have had to pay tax at the corporate level.

estimate; HMG failed to make such payments, giving rise to additional liability for underpayment. In December 1999, KASH informed George Haddad that HMG was liable for the built-in-gains tax and recommended that HMG delay filing its 1999 taxes from March 2000 to September 2000, the given reason being an on-going audit of HMG's 1997 tax return by the IRS.

Subsequently, on March 14, 2000, KASH filed a Form 7004 with the IRS to extend the deadline for filing HMG's taxes until September 15, 2000. The extension form required an estimate of the tentative tax due and payment of that amount, but KASH omitted any reference to the large built-in-gains tax that was due and instead listed the tentative tax as only $9,799. HMG did not pay the much larger built-in-gains tax until October 2000, making itself potentially liable for penalties and interest.

The outcome was that the IRS imposed a penalty of $5,200 on HMG for failing to make estimated quarterly payments on the built-in-gains tax in 1999 and imposed interest of $5,084 for delaying payment in 2000 from March 15 until October; it abated any penalty for the delay in payment in 2000 after a new accountant blamed this delay on KASH. Massachusetts, which apparently received some estimated payments but not enough, imposed a penalty of $1,544 and interest of $517 for the delay in payment of the balance of the tax in 2000.

In December 2002, HMG sued KASH in Massachusetts state court, and KASH removed the suit to the federal district court based on diversity jurisdiction. The complaint focused on two charges: (1) that KASH gave faulty advice in recommending that HMG close-out the "margin-against-the-box" transaction and convert to a Subchapter S corporation; and (2) that in an attempt to delay facing up to the adverse tax consequences of those transactions, KASH caused HMG to incur unnecessary penalties and interest. HMG's claims, as finally presented, asserted negligence and a violation of Chapter 93A, Mass. Gen. Law. ch. 93A (2008).[3]

The jury found that KASH had been negligent as to the failures to make timely payments, but the damages awarded ($7,145) were solely for federal and state interest and penalties incurred from March 15, 2000 (the date on which HMG's tentative taxes were due) until October 15, 2000 (when the tax was paid). The jury awarded nothing for the other penalties the IRS imposed on HMG for failing to make quarterly installment payments in 1999.

The jury also awarded nothing on the claim that KASH negligently advised HMG on the Subchapter S conversion and closing

---

[3]HMG's claims rested on section 11 of Chapter 93A, which provides a right of recovery for any business entity injured by "an unfair method of competition or an unfair or deceptive act or practice" by another business entity. Mass. Gen. Law. ch. 93A, § 11. The statute permits the award of double or treble actual damages at the judge's discretion for "willful or knowing violation[s]" and also requires the award of "reasonable attorneys' fees and costs" to a successful plaintiff, "irrespective of the amount in controversy." Id.

the "margin-against-the-box" transaction. The jury could have thought KASH's advice on these transactions non-negligent or that HMG suffered no damages as it was unlikely to have kept the transaction open for 10 years while continuing to pay "rent" on the borrowed stock. In all events, HMG does not challenge the jury's verdict so far as it was adverse to HMG.

On the Chapter 93A claim, the jury gave an advisory verdict rejecting any award, possibly concluding that the underpayment on the extension was mere negligence and did not reach the Chapter 93A threshold of wrongdoing; but the trial judge--the trier of fact as to this claim--found for HMG, concluding that KASH had violated section 11 of Chapter 93A by deceiving HMG as to the required payments and had knowingly misstated HMG's tentative tax due on the extension form in March 2000.

Further, the trial judge expanded the damage award. Although the jury awarded only the amount of interest and penalties imposed on HMG after March 15, 2000--the date on which HMG's tentative taxes were due--the judge added $5,200 to that amount (for a total of $12,345) based on the IRS penalty imposed on HMG for not making quarterly estimated payments in 1999 after the transaction had been closed. The trial judge then trebled the total (to $37,035), as Chapter 93A permits, based on a further finding of a "willful or knowing violation" by KASH. Mass. Gen. Laws ch. 93A, § 11. Further adjustments for interest, and then for

a recalculation of interest, led to a final damage award of $42,227.10.

Then, after proceedings before and a recommendation by a magistrate judge, the district court awarded HMG $205,992 in attorneys' fees and $53,698 in costs. Unlike the exemplary double or triple damages permitted by section 11, an award of attorneys' fees for the prevailing plaintiff is mandatory for a Chapter 93A violation. Mass. Gen. Laws ch. 93A, § 11. KASH has now appealed from both the judgment imposing damage liability and the later award of attorneys' fees and costs, and we have consolidated the two appeals.

In this court KASH adopts a "kitchen sink" approach, challenging numerous district court rulings on multiple grounds; but the main attacks are directed against the court's Chapter 93A findings, which undergird the treble damages and attorneys' fees awards, and against the calculation of attorneys' fees. This being a diversity case, Massachusetts substantive law applies. Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427 (1996). The standard of review varies with the individual claim of error.

KASH first argues that the district judge's fact-finding underlying his Chapter 93A verdict was clearly erroneous and warrants reversal, focusing on three subsidiary findings. Two of the district judge's statements challenged by KASH concern the tax consequences of closing the "margin-against-the-box" transaction

and converting to a Subchapter S corporation.[4]  Read carefully, neither statement is inaccurate; one does hinge on the possibility that, had Haddad fully understood the tax consequences, he would have kept the "margin-against-the-box" transaction open for 10 more years, but the judge made no finding on the point.

Anyway, neither supposed error matters because Chapter 93A liability was <u>not</u> imposed with respect to KASH's advice to HMG on these transactions; rather, Chapter 93A liability was imposed because of KASH's allegedly deceptive conduct in concealing the tax liability from HMG by not advising HMG of the need to make quarterly tax payments in 1999 and by filing in March 2000 an extension form listing the wrong amount of tentative tax.  An error on either of the points KASH raises would not undercut the award based on this other conduct by KASH.

The third and more pertinent subsidiary finding attacked by KASH is the finding that the accountants were responsible for HMG's failure to pay the tentative tax due by March 15, 2000.  KASH claims HMG understood its liability for the extra tax and

---

[4]One is that the judge thought that the "built-in-gains" tax was an additional tax, rather than a substitute for a Subchapter C tax that would otherwise have to be paid; but this is accurate if HMG converted and waited 10 years.  The other is that the judge said the "built-in-gains" tax would not have been imposed if the conversion had been delayed a year--technically an accurate statement even if one assumes that a Subchapter C tax would be paid instead.  Elsewhere in the opinion, the judge more precisely noted that built-in-gains taxes are "imposed on the sale of any appreciated corporate assets within ten years of a corporation's conversion to a subchapter S corporation."

deliberately underpaid in order to conserve cash.  There was conflict on this point and some of the evidence was helpful to KASH's position, but the trial judge's position was supported by detailed findings and is not clearly erroneous.  We need not repeat his explanation because KASH's attack is itself defective.

It is of no use for KASH to cite to or even describe evidence in its favor without also discussing the evidence the other way and showing by analysis why no reasonable judge or jury could decide the issue against it.  Cf. United States v. McCarthy, 77 F.3d 522, 529 (1st Cir. 1996), cert. denied, 519 U.S. 991 (1996), 519 U.S. 1093 (1997). Importantly, KASH does not explain its own patent understatement of the taxes due when it filed an extension form.  The jury and the trial judge agreed that KASH was at fault for that non-payment (although not to the same degree).

KASH alternatively argues that its conduct did not rise to the level of "rascality" needed to establish a Chapter 93A violation, Damon v. Sun Co., Inc., 87 F.3d 1467, 1483-84 (1st Cir. 1996), but this claim--not seriously developed--depends partly on the premise that HMG was properly advised as to the need to make its tentative tax payment in March 2000 and chose to conserve cash. The trial judge found that KASH failed to give proper advice so as to conceal the adverse tax consequences of its earlier advice and, further, found that KASH knowingly provided false information to the IRS about the tax due when filing the extension form.  This is

enough, whatever the standard of appellate review governing the rascality label.[5]

KASH next claims that the judge erred by meeting with the jury, after the jury rendered its own verdict, to ask them about their advisory verdict on the Chapter 93A claim. KASH's theory is not that the <u>jury's</u> verdict should be overturned on this basis, but that this conversation influenced the <u>judge's</u> Chapter 93A decision. The district judge, however, told the parties that he would speak with the jurors and KASH did not object, leaving KASH dependant on showing plain error. <u>United States</u> v. <u>Hilario-Hilario</u>, 529 F.3d 65, 74-75 (1st Cir.), <u>cert. denied</u>, 129 S. Ct. 470 (2008).

KASH claims it did not object because it did not expect the district judge to talk to the jury about its deliberations, but the judge told counsel that he was going to talk to the jury and then "advise you [counsel] as to what the jury says about negligence damages"; if KASH wanted specific limitations on what was discussed (or objected to any discussion), it should have said so then. KASH says that the discussion was harmful to it but it gives no persuasive reason for thinking that the discussion altered the result; and, whatever the advisability of the judge's

_____

[5]The proper standard of review, discussed in various decisions, <u>e.g.</u>, <u>Fed. Ins. Co.</u> v. <u>HPSC, Inc.</u>, 480 F.3d 26, 34 (1st Cir. 2007), ought to depend on the precise challenge or challenges: construing the statute is a matter of law; findings as to conduct and motive are reviewed for clear error; and on "law application" issues deference is often afforded although there are exceptions, <u>see, e.g.</u>, <u>Bolton</u> v. <u>Taylor</u>, 367 F.3d 5, 7-8 (1st Cir. 2004).

consultation, the demanding standard of plain error has not been met.  See United States v. Olano, 507 U.S. 725, 734-36 (1993).[6]

Relatedly, KASH says the district court erred in denying KASH's later requests for admissions as to what the judge told the parties about his communications with the jury.  KASH's argument is hard to decipher, but the point is subsumed by our prior discussion.  KASH did not object beforehand, and an inquiry after the event, about a judge and jury discussion to which it did not object and that cannot be undone, comes too late (save, perhaps, in extraordinary circumstances not here present).

A more serious claim is KASH's attack on the calculation of damages, homing in on the fact that the delay in paying its taxes gave HMG the use of the money in the meantime.  There was evidence at trial (not seriously disputed by HMG) that HMG earned about 7 percent on the withheld funds; KASH says both that HMG deliberately intended to underpay its taxes and that, anyway, the benefits to HMG of not paying offset any interest and penalties imposed by the IRS and state tax authorities.  The first point was a disputed issue resolved by both jury and judge against KASH and is not seriously developed.

---

[6]The cases KASH does cite are inapposite, with most focusing on impermissible interference with a jury's verdict. E.g., Nelson v. S. Pac. Co., 67 P.2d 682, 685-86 (Cal. 1937) (judge ought not interrupt jury deliberations prior to jury verdict); Shears v. Metro. Transit Auth., 86 N.E.2d 437, 437-38 (Mass. 1949) (post-verdict statements from jury cannot be used to alter jury verdict).

The second point <u>might</u> be a basis for reducing damages if a remand for that purpose was what KASH now sought. The jury seemingly allowed no offset and the judge even more clearly did not do so. Whether an offset should be allowed could be regarded as a policy choice, cf. Restatement (Second) of Torts § 920A(2) & cmt. b (1979) (collateral source rule), but the Massachusetts case law--which neither party develops--may well favor such an offset.[7] HMG does not attempt to explain why, given the testimony as to HMG's use of an interest paying account for spare cash and evidence about the rate paid, there should be no offset.

However, KASH has not <u>asked</u> for a recalculation that reduces damages, but rather for a determination that there were no net damages, and even a 7 percent return on withheld payments would not show that. Whether the tax authorities' imposition is regarded as interest, a penalty, or some combination of the two, the total paid by HMG appears to exceed what it could have earned in interest. The gap is not bridged by speculation by KASH that HMG benefitted in some unspecified amount because withholding payment made its capital position better (at least in appearance).

---

[7]Such offsets, consistent with the Restatement (Second) of Torts § 920 (1979), have been applied by Massachusetts courts in Chapter 93A cases, <u>see, e.g.</u>, <u>Ameripride Linen & Apparel Servs., Inc.</u> v. <u>Eat Well, Inc.</u>, 836 N.E.2d 1116, 1120-21 (Mass. App. Ct.), <u>review denied</u>, 840 N.E.2d 55 (Mass. 2005); <u>see also</u> <u>Kattar</u> v. <u>Demoulas</u>, 739 N.E.2d 246, 258 (Mass. 2000).

KASH's all-or-nothing gambit is understandable. A remand might marginally reduce the damages, although not by much because under Chapter 93A the offset might be made only after the gross loss was computed and trebled.[8] Litigating on remand to achieve a minor reduction would cost KASH money and might add to attorneys' fees for HMG, and KASH would still owe the huge attorneys' fees already awarded, unless it could get them reduced or nullified on independent grounds. Anyway, KASH has not sought a remand to recalculate damages so these issues need not be pursued.

KASH next argues that the district court erred in assessing $12,345 in damages (before trebling) instead of the only $7,145 in damages awarded by the jury. It claims that the additional $5,200 in damages added by the trial judge accrued prior to KASH's March 15, 2000, filing for an extension of time to submit HMG's taxes, and that March 15, 2000, was the first day on which a Chapter 93A violation could have occurred given the jury's finding that KASH did not act negligently prior to this date.

The district judge, however, explained that the $5,200 "represent[ed the] separate penalties imposed on HMG by the [IRS] because HMG failed (due to the unfair and deceptive act of KASH) to make quarterly payments on its liability for the [built-in gains

---

[8]One Massachusetts appellate case explicitly holds offsets occur only after applying double or treble damages in Chapter 93A claims, Ameripride Linen, 836 N.E.2d at 1120-22, and another Supreme Judicial Court case implies as much, Wolfberg v. Hunter, 432 N.E.2d 467, 473-74 (Mass. 1982).

tax] for tax year 1999."  The built-in-gains tax resulted from a 1999 transaction and, as already discussed, HMG should have made quarterly installment payments on that amount in 1999.  KASH nowhere shows that this finding is clear error, nor does KASH explain why the jury's verdict should foreclose the judge's conclusion.[9]

This brings us to the treble damage award.  The first argument is that KASH's Chapter 93A violation was not willful or knowing--the threshold requirement for trebling.  Mass. Gen. Laws ch. 93A, § 11.  But the trial judge found that KASH had deceived HMG by not telling it to make quarterly installment payments in 1999 and further deceived HMG (and effectively the IRS as well) by not revealing the built-in-gains tax liability on the March 2000 extension form.  KASH's argument, cursorily made, does not show clear error by the judge.

A more serious objection to the treble damages exists.  Under section 11 of Chapter 93A:

> The respondent may tender with his answer in any such action a written offer of settlement for single damages.  If such tender or settlement is rejected by the petitioner, and if the court finds that the relief tendered was reasonable in relation to the injury

---

[9]KASH might have argued that the jury verdict negated deception  and that this resolution, even if wrong, was binding on the judge, but neither is a fool-proof proposition.  See Troy v. Bay State Computer Group, Inc., 141 F.3d 378, 382-83 & n.3 (1st Cir. 1998); Wallace Motor Sales, Inc. v. Am. Motors Sales Corp., 780 F.2d 1049, 1064-67 (1st Cir. 1985).

> actually suffered by the petitioner, then the court shall not award more than single damages.

Mass. Gen. Laws ch. 93A, § 11.  Pertinently, in October 2002 and prior to its answer, KASH made an offer to settle the case for $20,000.  Ultimately, the single damages (ignoring interest) KASH was found to owe amounted to only $12,345, so it says the $20,000 was a reasonable offer and cuts off treble damages.

The district judge said that the letter was directed only to claims (later dismissed) brought by George Haddad personally (under section 9 of Chapter 93A) and not to the claims by HMG (under section 11) and also that the offer was not attached to KASH's answer as the statute requires.  However, the demand letter HMG sent to KASH asked for $224,569, with no distinction as to Haddad and HMG; KASH's response, offering $20,000, makes clear that the offer was for a general release from both parties, so the trial judge's first reason was clear error.[10]

As to the second ground, the settlement offer was made before the answer rather than with it, but the statute aims to ensure that a timely settlement offer is made, see Int'l Fidelity Ins. Co. v. Wilson, 443 N.E.2d 1308, 1318 (Mass. 1983),  and HMG

---

[10]The trial judge may have believed that because section 9 requires a demand letter and section 11 does not, compare Mass. Gen. Laws ch. 93A, § 9(3), with id. § 11, HMG's demand letter and KASH's settlement offer went only to the section 9 claims.  But the actual content of the demand letter and settlement offer belie this assumption.

points to no prejudice from the pre-answer offer to settle the intertwined claims of the two plaintiffs. The timing of KASH's offer was prompted by the requirements of section 9, which specifies that a demand letter be sent before the complaint is filed. Mass. Gen. Laws ch. 93A, § 9(3).

However, KASH forfeited this objection to trebling by failing to make the argument prior to judgment. KASH did raise the objection by a motion to amend or alter the judgment filed in January 2006, but KASH points us to no earlier presentation of the argument. Arguments that could readily have been made prior to the judgment cannot first be raised in a motion to alter or amend a judgment. Venegas-Hernandez v. Sonolux Records, 370 F.3d 183, 189-90 (1st Cir. 2004).[11] In its reply brief, KASH simply ignores this problem.

The last set of issues on appeal concern the award of attorneys' fees and costs, "reasonable" fees and costs being automatic under Chapter 93A. Mass. Gen. Laws ch. 93A, § 11. KASH argues that no fees were reasonable because of the settlement offer. The magistrate judge thought that issue beyond her remit, partly because the district judge had rejected the argument, but we have not accepted his grounds. And, as KASH did raise this

---

[11]KASH filed several detailed requests for findings of fact and rulings of law on the Chapter 93A claim prior to the judge's decision and so had ample opportunity to raise the objection.

-17-

argument before the proceeding to determine fees and costs, it did not forfeit this version of its objection.

Whether a reasonable settlement offer automatically bars attorneys' fees for a claim under section 11 is unclear. One could argue for a negative answer given that section 9 does contain such an automatic bar, Mass. Gen. Laws ch. 93A, § 9(4), while section 11 does not. Either way, rejection of a reasonable offer might still <u>bear</u> on the reasonable amount of attorneys' fees incurred thereafter and, while the magistrate judge may have been right that the settlement issue was out of her hands, we are not similarly limited.

KASH argues the settlement offer must have been "reasonable" because it exceeded the $12,345 that HMG claimed in Chapter 93A damages by the time of trial (and that were awarded by the district judge). But KASH's settlement offer was for <u>general</u> release of all HMG's claims, which included a claim based on supposedly incompetent advice relating to closing the "margin-against-the-box" transaction and converting to Subchapter S status. If incurring the built-in-gains tax was due to negligent advice, the amount of loss was substantial.

The negligent advice claim failed at trial, but that does not mean it had no value and that no reasonable attorney could have expected to recover more than $20,000 on the combined claims. <u>Cf. Twin Fires Inv., LLC</u> v. <u>Morgan Stanley Dean Witter & Co.</u>, 837

N.E.2d 1121, 1139 (Mass. 2005). The defense was already tainted by KASH's handling of the estimated tax payments, and, conceivably, a jury might have thought that, with better advice, the transaction might have been kept open long enough to avoid the tax altogether.

KASH argues that the allowed fees are unreasonably high and should not reflect the time spent to show negligent advice as to closing the transaction and converting to a Subchapter S corporation, claims that failed at trial. Our review of an attorneys' fees award is deferential, see Figueroa-Torres v. Toledo-Davila, 232 F.3d 270, 277-79 (1st Cir. 2000), notwithstanding KASH's observation that the magistrate judge did not preside over the trial, e.g., Interface Partners Int'l Ltd. v. Hananel, 575 F.3d 97, 100-101 & n.6 (1st Cir. 2009).

The Chapter 93A claims here--that KASH failed to tell HMG to make quarterly installment payments and filed a misleading extension form--turned in part on the asserted premise that Hogan misled Haddad in giving the earlier advice that generated the built-in-gains tax liability in the first place. The supposed earlier misadvice was HMG's explanation as to why KASH would want to conceal the resulting adverse tax consequences; Haddad specifically testified that he had been assured that taxes on the closing would be small.

Under Massachusetts precedent, fees and costs for non-Chapter 93A claims are recoverable provided that those claims and

the Chapter 93A claims arise from a "single chain of events," DiMarzo v. Am. Mut. Ins. Co., 449 N.E.2d 1189, 1202 (Mass. 1983) (quoting Simon v. Solomon, 431 N.E.2d 556, 570 (Mass. 1982)); see also Schaumberg v. Friedmann, 888 N.E.2d 963, 968-69 (Mass. App. Ct. 2008), and the magistrate judge found the claims here sufficiently interconnected.

The amount recovered is one factor in determining what fee is reasonable, e.g., Star Fin. Servs., Inc. v. AASTAR Mortg. Corp., 89 F.3d 5, 16 (1st Cir. 1996), Linthicum v. Archambault, 398 N.E.2d 482, 488 (Mass. 1979), but is by no means "the fundamental factor," Homsi v. C. H. Babb Co., 409 N.E.2d 219, 225 (Mass. App. Ct. 1980); see also Peckham v. Cont'l Cas. Ins. Co., 895 F.2d 830, 841 (1st Cir. 1990). The case law contains examples of Chapter 93A cases where the fees awarded far exceed the damages awarded.[12]

Here, the final recovery was not trivial--about $40,000-- with the potential recovery being perhaps greater. Cf. Twin Fires Inv., 837 N.E.2d at 1139. The magistrate judge considered other factors--for example, the complexity of the case--and reduced the requested fees and costs by about 18 percent; KASH fails to show that this result was impermissible. Other judges might have reduced the fee because of the time spent on a quite weak claim, but this is a judgment call which we decline to second-guess.

---

[12]E.g., Twin Fires Inv., 837 N.E.2d at 1137-39; see also NASCO, Inc. v. Pub. Storage, Inc., 127 F.3d 148, 153-54 (1st Cir. 1997).

KASH offers other arguments on the matters addressed and on a few other issues, including claims that the district court should have granted it directed verdicts, instructed on comparative negligence and made other requested fee adjustments. We have considered all of these arguments but think none of them needs further discussion.

Affirmed.